IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CONVERGEN ENERGY WI, LLC

                Plaintiff,                            OPINION AND ORDER

v.                                                         20-cv-543-wmc

L'ANSE WARDEN ELECTRIC
COMPANY, LLC,

                Defendant.

---

This lawsuit is the latest filed of four, related actions, each pending in different jurisdictions. Defendant L'Anse Warden Electric Company, LLC ("L'Anse") has moved to transfer venue to the District Court for the Southern District of New York, where another of the related cases is pending. (Dkt. #12.) Plaintiff Convergen Energy WI, LLC ("CE-Wisconsin") opposes that motion. (Dkt. #24.) For the reasons that follow, the court finds that both convenience and the interests of justice favor transfer. Accordingly, defendant's motion will be granted.[1]

BACKGROUND

Plaintiff CE-Wisconsin operates a fuel pellet manufacturing plant in Green Bay, Wisconsin, pellets which defendant L'Anse has apparently consumed for some time to produce electric power. Indeed, until recently, L'Anse and CE-Wisconsin had been owned by the same ultimate parent company, Libra Capital US, Inc. ("Libra"). In January of this year, Libra sold CE-Wisconsin. As a part of that larger transaction, CE-Wisconsin and

---

[1] Plaintiffs' motion for a preliminary injunction is now also fully briefed and under advisement, but because the court is transferring this case to the Southern District of New York, the court will not take up that motion.

L'Anse signed a Supply Agreement, requiring CE-Wisconsin to sell and L'Anse to purchase fuel pellets for an additional ten years. Among other things, the Supply Agreement also contains an arbitration clause, requiring that: (1) all disputes be settled by arbitration in Madison, Wisconsin; and (2) the parties "shall continue to perform their respective obligations under this Agreement pending conclusion of the arbitration." (Burnett Decl., Ex. B (dkt. #14-2) 55-56.) That clause further states that "pending completion of arbitration pursuant to this provision, either party shall have the right to seek a temporary restraining order, injunctive relief or other interim or provisional relief." (*Id.* at 56.)

Defendant L'Anse, its parent Libra, and others now claim that the acquisition of CE-Wisconsin and related transactions, including the Supply Agreement, were the product of fraud. After negotiations between the parties to the acquisition failed, attorney Michael Stolper, on behalf of at least some of the disgruntled sellers sent an email to counsel for CE-Wisconsin and others involved with the sellers on May 11, 2020, attaching a draft complaint and explaining that "[a]bsent resolution of the issues raised in the attached complaint by noon Thursday, May 14, we will be seeking relief in a New York court." (Fischer Decl., Ex. A (dkt. #25-1) 1.) Meanwhile, L'Anse has, according to CE-Wisconsin, stopped making payments to CE-Wisconsin for fuel pellets that L'Anse had already ordered, accepted, *and* consumed.

Predictably enough, what happened next was a classic race to the courthouse. On May 14, CE-Wisconsin and an individual named Thomas Hansen filed a complaint against L'Anse and others in Brown County Circuit Court in Green Bay, Wisconsin, mere hours before the threatened New York suit was filed. (Fischer Decl. (dkt. #25) ¶¶ 4-6; Burnett

Decl., Ex. A (dkt. #14-1).) In the initial Brown County complaint, plaintiffs CE-Wisconsin and Hansen sought a declaratory judgment that the CE-Wisconsin Acquisition Agreement, the Supply Agreement, and related agreements were all enforceable. (Burnett Decl., Ex. A (dkt. #14-1).) That case was subsequently removed by defendants to the District Court for the Eastern District of Wisconsin -- Green Bay Division. *See* Notice of Removal, *Convergen Energy LLC v. Libra Capital US Inc.*, 20-cv-823-WCG (E.D. Wis. June 2, 2020), ECF No. 1.

Later that same day, May 14, L'Anse and others also filed suit in the District Court for the Southern District of New York, claiming fraud and seeking rescission of the Supply Agreement, protection of their trade secrets, and other relief. Complaint, *Convergen Energy LLC v. Brooks*, 20-cv-3746 (S.D.N.Y. May 14, 2020), ECF No. 1.[2] Just days after this action was filed, a temporary restraining order was entered in that case, temporarily enjoining CE-Wisconsin and the other New York defendants from, inter alia, using plaintiffs' trade secrets and ordering expedited discovery regarding the trade secrets issue. Temporary Restraining Order, *Convergen Energy LLC*, 20-cv-3746 (S.D.N.Y. May 19, 2020), ECF No. 28. A preliminary injunction hearing was initially scheduled for July 17, to address plaintiffs' motion requesting recovery and protection of their trade secrets and proprietary information. Order, *Convergen Energy LLC*, 20-cv-3746 (S.D.N.Y. May 19, 2020), ECF No. 62. While that hearing was apparently postponed, neither plaintiffs'

---

[2] Inexplicably, CE-Wisconsin represents that this complaint was filed "[u]nbeknownst to CE-Wisconsin," (Pl.'s Opp'n (dkt. #24) 3), while also acknowledging that it received the May 11 email, which expressly warned that such a complaint would be filed on May 14.

3

motions for TRO or preliminary injunction in the Southern District of New York appear to concern their broader claim that the Supply Agreement is unenforceable.

Some three weeks after these initial lawsuits were brought, on June 4, 2020, CE-Wisconsin further filed an action against L'Anse alone with the American Arbitration Association ("AAA"), involving the arbitration clause of the Supply Agreement. Before the AAA, CE-Wisconsin seeks payment from L'Anse for the outstanding fuel pellet invoices. (Hansen Decl., Ex. D (dkt. #7-4) 1.)

Finally, on June 10, 2020, CE-Wisconsin filed this lawsuit in Dane County, Wisconsin, seeking temporary injunctive relief "until such time as an arbitrator is assigned" to the AAA action. (Compl. (dkt. #4) ¶ 4.) Specifically, CE-Wisconsin asked for a temporary injunction "requiring L'Anse to continue to perform under the Supply Agreement, including payment of amounts currently due as well as payment for future fuel pellet deliveries." (*Id.* at 7.) On June 15, L'Anse removed the lawsuit to this court, and the next day, CE-Wisconsin filed a motion for a preliminary injunction, asking that the court order L'Anse to make payments of amounts allegedly due under the Supply Agreement. (Mot. for Prelim. Injunction (dkt. #6) 7.) Then, on June 18, L'Anse filed a motion to transfer this case to the Southern District of New York, which is presently before the court.

The following day, June 19, this court held a status conference, hoping to make sense of the four different lawsuits -- federal lawsuit in two districts in Wisconsin, another in the Southern District of New York, and an action before the AAA. Among other things, the court asked counsel for CE-Wisconsin why plaintiff brought its claim to enforce

4

arbitration in this court rather than pursue a preliminary injunction in the Eastern District of Wisconsin, especially since plaintiff had already asked for a declaration from the Eastern District that the Supply Agreement was enforceable. Rather than explain its unorthodox (and confusing) strategy, plaintiff now appears to have amended its Eastern District complaint to *omit* references to the Supply Agreement, and only asks for declarations as to the other agreements at issue. Other than this, no other activity appears to have occurred in the Eastern District case. No doubt relatedly, on June 23, 2020, plaintiffs in the New York case filed a motion to stay the arbitration action before the AAA, on the grounds that "the arbitration provision at issue is void, given that the Supply Agreement is the product of fraud." (Br. in Support of Mot. to Stay Arbitration, *Convergen Energy LLC*, 20-cv-3746 (S.D.N.Y. June 23, 2020), ECF No. 65.)

OPINION

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In other words, § 1404(a) authorizes a district court "to transfer an action filed in a proper, though not necessarily convenient, venue to a more convenient district." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977 (7th Cir. 2010). The Supreme Court has explained that the purpose of § 1404(a) is "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Continental Grain Co. v. Barge F.B.L.-585*, 364 U.S. 19, 26 (1960)). To this end, district courts are vested with broad discretion to adjudicate transfer

5

motions according to an "individualized, case-by-base consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622). The statutory language contemplates two elements: convenience and interest of justice. § 1404(a). The court addresses each prong below.

## I. Convenience

The convenience evaluation generally involves consideration of "the availability of and access to witnesses, and each party's access to and distance from resources in each forum." *Research Automation, Inc.*, 626 F.3d at 977 (citing cases). "Other related factors include the location of material events and the relative ease of access to sources of proof." *Id.* (citing cases). Defendant argues that all of these factors support finding the Southern District of New York as the more convenient venue. (Def.'s Br. (dkt. #13) 2-3.) In particular, defendant contends that the Supply Agreement was borne out of the negotiation and consummation of the larger CE-Wisconsin acquisition, which occurred in New York. (*Id.*) Defendant also explains that the Supply Agreement itself was executed in part in New York. (*Id.*) Thus, according to defendant, the operative facts occurred in its preferred venue. (*Id.*) Defendant further contends that plaintiff's claims raise questions about the validity and enforceability of the Supply Agreement, which will necessitate testimony from individuals who participated in its negotiation and execution, and most of those individuals operate out of Libra's New York headquarters. (*Id.* at 4.) Similarly, defendant points out that plaintiff's claims will almost certainly call for the production of evidence and documents located at Libra. (*Id.*)

In response, plaintiff primarily argues that "none of these considerations apply" due to the limited nature of the relief sought in this lawsuit. (Pl.'s Opp'n (dkt. #24) 6.) Specifically, plaintiff contends that it *only* seeks a preliminary injunction "pursuant to the terms of the Supply Agreement, requiring [L'Anse] to continue to perform under [that Agreement] during the pendency of the arbitration that has been initiated" and, therefore, "there will be no trial or discovery in this Court." (*Id.* at 6-7.) As defendant points out in reply, however, these arguments presuppose the validity and enforceability of the Supply Agreement and its arbitration clause. (Def.'s Reply (dkt. #27) 1.) In evaluating plaintiff's motion for a preliminary injunction to enforce the terms of the Supply Agreement, this court will necessarily need at least to *consider* defendant's affirmative defense that the Agreement is not binding.[3] Indeed, that is the primary basis on which L'Anse's opposition to CE-Wisconsin's motion for preliminary injunction rests. (Def.'s Opp'n Mot. Prelim. Injunction (dkt. #20) 1-2.)

Somewhat more persuasively, plaintiff argues that certain operative facts occurred in Wisconsin and that relevant proof is located here as well. (Pl.'s Opp'n (dkt. #24) 8.) In particular, plaintiff explains that its complaint is based on the production, delivery, and non-payment of fuel pellets from the CE-Wisconsin's plant, located in Wisconsin, although the use of the pellets occurred at L'Anse, located in Michigan. (*Id.*) Plaintiff further

---

[3] While it is perhaps possible that the arbitrator would be empowered to decide the enforceability of the Supply Agreement, before compelling arbitration a court would still need to determine the validity of the arbitration clause. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("[B]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists.").

represents that records related to those shipments, as well as L'Anse's non-payment, are located in Wisconsin. (*Id.*) While these facts arguably cut against transfer, this court would still, as an initial matter, need to consider the enforceability of the Supply Agreement if it were to retain the case, before turning to CE-Wisconsin's allegations of breach. Moreover, CE-Wisconsin cannot rebut L'Anse's proof that the operative facts, witnesses, and evidence related to the enforceability issue are all located in the Southern District of New York. Because of this, the court concludes that the convenience element favors transfer, principally because the *entire* dispute is pending in New York.

## II. Interests of Justice

Defendant also argues that the interests of justice favor transfer to the Southern District of New York, pointing out that the New York suit was filed on May 14, nearly a month before the present lawsuit, which was not filed until June 10. (Def.'s Br. (dkt. #13) 5.) Relatedly, defendant argues that the "advanced procedural history" of the New York suit "especially favors" transfer, including the issuance of a temporary restraining order and at least the scheduling of a preliminary injunction hearing. (*Id.*) Finally, defendant contends that "two courts adjudicating these issues risks contradictory findings and inconsistent outcomes whereby one district could enforce the supply agreement while the other rescinds [it]," and that transfer would eliminate the risk of such inconsistent results, not to mention duplicate efforts. (*Id.* at 6.)

Nevertheless, plaintiff, for its part, argues that the interests of justice favor retention of the case. (Pl.'s Opp'n (dkt. #24) 10.) First, it contends that this court can decide the pending preliminary injunction more quickly than the New York Court can. (*Id.* at 9-10.)

Second, since the Supply Agreement specifies that Wisconsin law applies, plaintiff argues that this court is better positioned to determine the case. (*Id.* at 10 (citing *Beard v. J.I. Case Co.*, 823 F.2d 1095, 1097 (7th Cir. 1987)).) In response to defendant's arguments, plaintiff also contends that: (1) little relevant action has occurred in the New York case; and (2) there is no risk of inconsistent results between this court and the New York case because this court need not make *any* determinations as to the validity of the Supply Agreement. (*Id.* at 11-12.)

On balance, the court also finds that the interests of justice favor transfer to the District Court for the Southern District of New York. The Seventh Circuit has explained that this element "relates to the efficient administration of the court system." *Research Automation, Inc.*, 626 F.3d at 978 (citing *Van Dusen*, 376 U.S. at 626-27). In analyzing this element, courts may take into account various considerations, including the existence of related cases in the transferor district. *Id.* In particular, courts have found that trying related cases together is an important and sometimes decisive factor in a motion to transfer. *Sec. & Exch. Comm'n v. First Nat. Fin. Corp.*, 392 F. Supp. 239, 241 (N.D. Ill. 1975) ("As a general proposition, cases should be transferred to districts where related actions are pending.") (citing *Jacobs v. Tenney*, 316 F. Supp. 151 (D. Del. 1970)); *Rosen v. Spirit Airlines, Inc.*, 152 F. Supp. 3d 1055, 1063 (N.D. Ill. 2015) ("While transfer to the Southern District of Florida may not be warranted by looking to the convenience of the parties and witnesses alone, transfer is warranted to enable this case to be coordinated or consolidated with the similar *Legg* class action."). The filing order of related lawsuits is one factor courts may take into consideration in evaluating whether to transfer, although it does not control the

outcome. *Research Automation, Inc.*, 626 F.3d at 977 (holding that filing order of related suits in different districts is "only one factor among many" in determining whether to transfer a case).

Here, despite plaintiff's assertions to the contrary, this case is inextricably tied to the pending New York action. As noted above, plaintiff seeks to enforce the Supply Agreement, yet in the New York case defendant has claimed -- and again argues here -- that the Agreement is part of a larger, unenforceable acquisition transaction. A decision by this court -- either granting plaintiff's preliminary injunction or denying it -- will necessarily have to address the substantive issue of the enforceability of the Supply Agreement and, thus, will necessarily overlap with issues that will ultimately be decided in the New York action. Further, while not necessarily decisive, the New York case was filed first, which cuts in favor of transfer to that district.[4]

As plaintiff points out, other relevant factors in the "interest of justice" prong include the "likely speed to trial" and "each court's relative familiarity with the relevant law." *Research Automation, Inc.*, 626 F.3d at 978 (citing *Chi., Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 303 (7th Cir. 1955); *Van Dusen*, 376 U.S. at 645). However, once transferred, plaintiff's pending preliminary injunction motion will be in exactly the same

---

[4] Of course, the Eastern District of Wisconsin action was filed hours before the New York suit, albeit originally in state court. Like this case, however, the Eastern District lawsuit does not include the entire range of issues before it, and plaintiff has now intentionally carved out any issue related to enforceability of the Supply Agreement. Moreover, in merely seeking a declaratory judgment as to the enforceability of the other acquisition documents, plaintiffs in that suit essentially acknowledge that they are not "the natural plaintiffs." *See Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 431 (7th Cir. 1993) ("[A] suit for declaratory judgment aimed solely at wresting the choice of forum from the 'natural' plaintiff will normally be dismissed and the case allowed to proceed in the usual way.").

position with the New York court as it is before this one -- fully briefed and ready for adjudication.  As to the familiarity with the relevant law, plaintiff's argument again is based on (1) the validity of the Supply Agreement and (2) its Wisconsin choice-of-law provision.  However, defendant invokes New York law in arguing that the Supply Agreement is unenforceable in its opposition to plaintiff's preliminary injunction, and the District Court for the Southern District of New York is presumed to be in a better position to decide that initial matter.  *Beard*, 823 F.2d at 1097 (("[W]e presume that a district judge is likely to have a special familiarity with the law of the state in which he or she sits.").  Thus, neither of these factors cut strongly in favor of retention of this case, and certainly do not overcome the efficiencies that would be gained by transfer to the jurisdiction with the entire dispute between the parties now before it.

## ORDER

IT IS ORDERED that defendant's motion to transfer (dkt. #12) is GRANTED.  This case is TRANSFERRED to the District Court for the Southern District of New York.

Entered this 8th day of July, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

11